The court incorporates by reference in this paragraph and adopts as the findings and orders of this court the document set forth below.



# /S/ RUSS KENDIG

Russ Kendig
United States Bankruptcy Judge

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | |
|---|---|
| In re: | ) |
| | ) CHAPTER 7 |
| MICHAEL JOSEPH SWERWINSKI & | ) |
| | ) CASE NO. 09-64294 |
| DONNA MARIA SWERWINSKI, | ) |
| | ) ADV. 10-6009 |
| Debtors. | ) |
| | ) JUDGE RUSS KENDIG |
| _____ | ) |
| | ) |
| JOSIAH L. MASON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| MICHAEL JOSEPH SZERWINSKI, | ) |
| | ) |
| DONNA MARIA SZERWINSKI, | ) |
| | ) |
| NATIONAL CITY BANK & | ) |
| | ) **MEMORANDUM OF OPINION** |
| MUSKINGUM WATERSHED | ) **(NOT FOR PUBLICATION)** |
| CONSERVANCY, | ) |
| | ) |
| Defendants. | ) |

1

On May 28, 2010, the chapter 7 panel trustee Josiah L. Mason ("trustee") filed a motion for summary judgment. This motion is now before the Court.

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b) and the general order of reference entered in this district on July 16, 1984. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (K) and (O) and venue is appropriate under 28 U.S.C. § 1409.

This opinion is not intended for publication or citation. The availability of this opinion, in electronic or printed form, is not the result of a direct submission by the Court.

## BACKGROUND

A broad view of the situation is as follows. Debtors Michael Joseph Szerwinski and Donna Maria Szerwinski ("debtors") entered into a lease for a tract of land. They paid money to the previous lessees with the intention of purchasing a cottage located on the tract of land. The debtors entered into a mortgage relating to their interests in the lease and the cottage. The debtors filed chapter 7 bankruptcy. The trustee filed an adversary proceeding which asks the Court to determine the parties' interests in the lease and the cottage. The trustee's motion for summary judgment now asks the Court to find that the mortgage is not secured by the lease or the cottage.

On September 22, 2006, the debtors entered into a 30-year "Cottage Site Lease" with the Muskingum Watershed Conservancy District ("District"). The lease covered property on Charles Mill Reservoir known as Lot CM 234 and with a street address of 945 Trout Dr., Mansfield, Ohio 44903 ("property"). Several sections of the Cottage Site Lease are relevant to the Court's decision.

Section 5 of the lease requires the debtors to construct and maintain a dwelling on the property within five years of signing the lease. However, a cottage had already been built on the premises by the previous lessees Jesse E. Hawks and Janet E. Hawks (collectively "the previous lessees"). On September 25, 2006, the previous lessees and the debtors executed an "Assignment and Extension of Cottage Site Lease," which purported to transfer the previous lessees' interest in their Cottage Site Lease to the debtors for the consideration of one dollar. On September 27, 2006, the previous lessees and the debtors executed a "Bill of Sale" that purported to transfer title to the cottage to the debtors for the sum of $105,000.

At least two sections of the Cottage Site Lease relate to the parties' ownership interests in the property. Section 19 of the Cottage Site Lease provides that "[a]ny buildings, structures or improvements erected by the LESSEE on said premises shall be property of the LESSEE . . . ." and provides that the debtors may remove any dwelling they construct within 30 days of the expiration of the lease. However, Section 18 provides that in the event of a default "all right, title and interest of the LESSEE in the leased premises shall terminate and cease and shall revert to the LESSOR, together with all buildings, structures, and improvements . . . ."

2

Section 12 of the lease provides that "[t]he LESSEE shall at all times keep the leased premises, together with any buildings . . . free from all . . . mortgages . . . except as may first be approved by the lessor." On September 27, 2006, the debtors and the District executed a "Consent and Agreement," which granted the debtors permission to mortgage their "interest in the Lease and/or mortgage upon any residence, building or appurtenant improvements now or thereafter located on said leased premises . . . ." On the same day, the debtors executed a mortgage in favor of National City Bank, now known as PNC Bank ("PNC"). According to PNC's answer, the mortgage secured payment of a note in the approximate amount of $233,284.78 at an interest rate of 7.125%.

The section of the mortgage that describes the property appears as follows:

**TRANSFER OF RIGHTS IN THE PROPERTY**

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to Lender the following described property located in the

County                                    of                    ASHLAND
[Type of Recording Jurisdiction]              [Name of Recording Jurisdiction]

Parcel ID Number:                                              which currently has the address of
                                                                                      [Street]
945 TROUT DR,
MANSFIELD                                        (City), Ohio      44903        [Zip Code]
("Property Address"):
    TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."
    BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

Four aspects of this section of the mortgage are relevant. First, the mortgage incorrectly states that the property is located in Ashland, as opposed to Richland, County. Second, the property is only identified by its street address and the mortgage does not contain a legal

3

description of the property. Third, the mortgage does not describe the debtors' interest in the property as a leasehold. Fourth, the mortgage covers fixtures that are "now or hereafter a part of the property."

The Richland County Auditor's Office maintains a "Property Report Card" for the property. The photograph of the cottage suggests that it is a house and not a modular home or trailer. The Property Report Card contains conflicting information about the square footage of the cottage, and the photograph of the cottage cannot be resolved with the accompanying diagram. In addition, the Property Report Card states that the cottage has gas and central air conditioning and has a finished basement. Finally, the Property Report Card lists the debtors as the owners of the cottage and indicates that the debtors are paying property taxes for the cottage but not the land.

## SUMMARY JUDGMENT STANDARD

The procedure for granting summary judgment is found in Federal Rule of Civil Procedure 56(c), made applicable to this proceeding through Federal Rule of Bankruptcy Procedure 7056, which provides in part:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed. R. Civ. P. 56(c).

To succeed on a motion for summary judgment, the movant must demonstrate each of the elements of its claim. R.E. Cruise, Inc. v. Bruggeman, 508 F.2d 415, 416 (6th Cir. 1975). In considering a motion for summary judgment, the evidence must be viewed in the light most favorable to the nonmoving party, Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59 (1970), and all reasonable inferences are to be drawn in favor of the non-moving party. Matsushita Elect. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 582 (1986). When "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party," the court should grant a motion for summary judgment. Id. at 587.

## ARGUMENTS

The trustee argues that the mortgage does not create a perfected security interest in the cottage because the cottage is a chattel and an interest in a chattel can only be perfected by filing a UCC financing statement with the Ohio Secretary of State. In the alternative, the trustee argues that the cottage is a fixture and the mortgage does not adequately describe the cottage to create a perfected security interest. In the alternative, the trustee argues that even if the cottage is part of the real property, the mortgage document is defective under Ohio law. In its response, PNC

4

argues that the mortgage is valid under Ohio law and creates a perfected security interest in both the debtors' leasehold interest and the cottage.

## LAW AND ANALYSIS

The outcome of this case depends upon whether the cottage is classified as a chattel, a fixture, or real property. First, the Court explains the legal test for this classification. Second, the Court explains how the classification of the cottage will determine the parties' rights. Third, the Court explains how material questions of fact result in the denial of the trustee's motion.

### A. Classification as Chattels, Fixtures, or Real Property under Ohio Law

The law divides the world of things into three parts: chattels, fixtures and real property. Teaff v. Hewitt, 1 Ohio St. 511, 526 (1853).

#### 1. Chattels

Chattels are goods that are movable. But chattels also include goods that are "for temporary purposes somewhat attached to the land . . . ." Teaff, 1 Ohio St. at 527. However, the more related to the land a chattel becomes, the more likely it will become a fixture. *See* Ohio Rev. Code § 1309.102(41).

#### 2. Fixtures

"Fixtures" are defined as "goods that have become so related to particular real property that an interest in them arises under real property law." Ohio Rev. Code § 1309.102(41). In Teaff, 1 Ohio St. at 527, the Ohio Supreme Court provided a three-part test to determine whether a chattel has become related enough to real estate to be considered a fixture.

> 1st. Actual annexation to the realty, or something appurtenant thereto. 2d. Application to the use or purpose of that part of the realty with which it is connected. 3d. The intention of the party making the annexation, to make the article a permanent accession to the freehold – this intention being inferred from the nature of the article affixed, the relation and situation of the party making the annexation, the structure and mode of annexation, and the purpose or use for which the annexation has been made.

Id. at 530. *See also* Canton Fin. v. Pritt, 2002 WL 263968 (Ohio App. 2002).

A high degree of annexation can overcome the intentions of the parties. As one court put it.

5

> If the articles which are annexed to realty become so
> absorbed within it by virtue of the method and degree of
> annexation, and their adaptability to the use of the realty, their
> identity as personalty may be said to be destroyed and they
> become fixtures, regardless of the intention of the parties.

First Fed. S. & L. Assn. of Willoughby, 216 N.E.2d 396, 398-99 (Ohio Com. Pl. 1965).

The analysis is further complicated by the fact that "the same article may be a fixture under certain circumstances and a chattel under others, and that there could be such a difference in the same article as between vendor and vendee, landlord and tenant, heir and executor, or tenant for life and remainderman." Roseville Pottery v. Bd. of Revision of Muskingum County, 149 Ohio St. 89, 95 (1948). Consequently, the parties' relationship is important and determination of whether a fixture is created requires fact-intensive, case-by-case review.

### 3. Real Property

The line between fixtures and real property has not received as much attention as the line between chattels and fixtures. However, the Illinois Supreme Court has observed:

> The term "fixture" and the phrase "improvement to real property"
> are not synonymous. A fixture is often thought of as a former
> chattel which, while retaining its separate physical identity, is so
> connected with the realty that a disinterested observer would
> consider it a part thereof . . . . An improvement, on the other hand,
> after being installed, may not have an identity separate from the
> overall system or building in which it is located. A fixture is, by
> definition, part of the real property. However, an "improvement to
> real property" need not necessarily constitute a fixture.

St. Louis v. Rockwell Graphic Sys.s, Inc., 605 N.E.2d 555, 556 (Ill. 1992) (citations omitted).

The Illinois Supreme Court's analysis contains two observations that are supported by Ohio law. First, courts are more prone to find an item to be a fixture if was previously a chattel. Ohio Rev. Code § 1309.102(41) Teaff, 1 Ohio St. at 527 ("A fixture is an article which was a chattel . . . ."). Second, the more physically integrated into the real property an item becomes, the more likely courts are to find that the item has legally become totally integrated with the real property. See Histe v. Buckley, 4 Ohio Cir. Dec. 490 (1894) (finding a barn to be real property because "[i]t was a large building, a foundation wall of stone being put into the earth a foot or more . . . .").

6

*B. Classification of the Cottage will Determine the Outcome of the Case*

1. Chattel

If the cottage is classified as a chattel, the trustee will prevail. The perfection of a security interest in goods requires the holder of a security interest to file a financing statement with the Secretary of State.[1] Ohio Rev. Code §§ 1309.310, 1309.510. Thus, even assuming PNC has a valid security interest, it could be avoided by the trustee pursuant to his strong arm powers under 11 U.S.C. § 544.

2. Real Property

If the cottage is classified as real property, PNC's lien would be secured by the debtors' leasehold interest in the property. *See* Abraham v. Fioramonte, 107 N.E.2d 321, 325–27 (Ohio 1952) (explaining that a leasehold interest can be secured by a mortgage). Of course, because the debtors could only mortgage the interest they have, PNC's lien would not secure anything beyond the debtors' leasehold interest and could not extend to the District's ownership interest in the cottage or the property. Id.

The trustee argues that the mortgage is defective and fails to secure PNC's interest in the lease. The motion notes that the recorded mortgage does not refer to the leasehold interest, does not provide any description of the property other than the post office address, and places the property in Ashland as opposed to Richland County, Ohio. However, the trustee does not provide any legal authority to support his position as required by Local Rule of Bankruptcy Procedure 9013-3.

The Court finds that the mortgage is compliant with Ohio law. Ohio Revised Code § 5302.12 provides a form mortgage and states that mortgages will be valid that follow "in substance." Section 5302.12 requires a description of the property but does not require a formal "metes and bounds" description. Argent Mort. Co. v. Drown (In re Bunn), 578 F.3d 487, 490 (6th Cir. 2009). As such, a mortgage that provides only a street address is adequate to give constructive notice. Id. The trustee does not cite any law supporting his assertion that the mortgage is invalid because it indicates the wrong county. The Court also notes that Ohio Revised Code § 5301.02 provides that a "mortgage . . . shall mortgage the entire interest which the grantor could lawfully . . . mortgage . . . unless it clearly appears . . . that the grantor intended to . . . mortgage a less estate." Therefore, it is not fatal that the mortgage does not specify that the debtor has a leasehold estate because section 5301.02 supplies the default rule.

3. Fixtures

If the cottage is a fixture, PNC has a security interest in both the cottage and the debtors'

---

[1]This rule is subject to exceptions that the parties do not argue are applicable here.

7

leasehold interest in the property. A security interest in a fixture may be perfected by a record of mortgage pursuant to Ohio Revised Code § 1305.509(C), which provides:

> (C) A record of a mortgage is effective, from the date of the recording, as a financing statement filed as a fixture filing or as a financing statement covering as-extracted collateral or timber to be cut only if:
>
> (1) The record indicates the goods or accounts it covers;
>
> (2) The goods are or are to become fixtures related to the real property described in the record, or the collateral is related to the real property described in the record and is as-extracted collateral or timber to be cut;
>
> (3) The record satisfies the requirements for a financing statement contained in this section other than an indication that it is to be filed in the real property records; and
>
> (4) The record is duly recorded.

The trustee argues that the financing statement does not "indicate the goods or accounts that it covers" as required by section 1305.509(C)(1) because it fails to specifically identify the cottage. But the trustee is mistaken. Ohio Revised Code § 1309.108 provides that, subject to exceptions not applicable here, "any description of personal or real property is sufficient whether or not it is specific if it reasonably identifies what it describes." Section 1309.108(B)(2) provides that a good is reasonably described by category and fixtures are a category of good. Ohio Rev. Code § 1309.102(44)(a). Thus, because the mortgage identifies "all . . . fixtures now or hereafter a part of the property" the mortgage "indicates the the goods or accounts it covers." Lehman Com. Paper, Inc. v. Official Comm. of Unsecured Creditors (In re Hawaiian Telcom Commc'ns, Inc.), 2009 WL 2575663, *7 (Bankr. D. Haw. 2009).

Furthermore, PNC's interest in the cottage would have priority over the District's. Ohio Revised Code § 1309.334(F), which provides that "a security interest in fixtures, whether or not perfected, has priority over a conflicting interest of an . . . owner of the real property if . . . [the] owner has, in an authenticated record, consented to the security interest . . . or the debtor has a right to remove the goods as against the encumbrancer or owner." In this case, the District has both consented to the security interest and granted the debtor the right to remove the cabin under specified circumstances.

8

*C. The Trustee's Motion for Summary Judgment Must be Denied*

The determination as to whether the cottage is a chattel, a fixture, or part of the real property is extremely fact intensive. Thus, it is unlikely that such a determination could be made at summary judgment. The Court reached the same conclusion in a recent case involving the same chapter 7 trustee and another cottage on the same lakefront. <u>Mason v. Cronebaugh (In re Cronebaugh)</u>, Adv. No. 06-6104 (Bankr. N. Dist. Ohio 2007). Unlike this case, the parties in <u>Cronebaugh</u> agreed to a stipulation of facts. Thus, summary judgment would be particularly inappropriate here.

Furthermore, summary judgment for the trustee is inappropriate because the facts, especially when viewed in the light most favorable to the non-movants, suggest that the cottage is not a chattel. The Property Report Card suggests that the cottage was constructed on site and never had an independent identity before it was installed on the property. Furthermore, the fact that the cottage has a basement suggests that it is well-integrated with and would be difficult to remove form the property.

The trustee might argue that the Cottage Site Lease indicates that the parties intended the cottage to be chattel. Section 19 of the Cottage Site Lease, which states that the debtors will own the cottage, supports this point of view. This point of view is also supported by the fact that the previous lessees attempted to transfer the cottage to the debtors through the Bill of Sale. However, all of the sections of the lease do not support the conclusion that the parties intended the cottage to be a chattel. For example, Section 18, which states that in the event of a default "all right, title and interest of the LESSEE in the leased premises shall terminate and cease and shall revert to the LESSOR, together with all buildings, structures, and improvements . . . .", treats the cottage as subject to the lease. Furthermore, the lease between the District and the original builder of the cottage is not in the record.

Ultimately, the Court finds it unlikely that a stick-built house with a basement would be considered a chattel. Although further investigation of the facts may show otherwise, the showing at this time is insufficient to carry the trustee's burden as the movant.

Accordingly, the trustee's motion for summary judgment is denied.

An order will issue with this opinion.

#    #    #

9

Service List:

Josiah L Mason
153 W Main St
PO Box 345
Ashland, OH 44805-2219

Michael Joseph Szerwinski
945 Trout Drive
Mansfield, OH 44903

Chrysanthe E Vassiles
Black McCuskey Souers and Arbaugh
220 Market Ave., South, Suite 1000
Canton, OH 44702

Donna Maria Szerwinski
945 Trout Drive
Mansfield, OH 44903

Amelia A Bower
Plunkett & Cooney
300 E Broad St
#590
Columbus, OH 43215

Erin M. Laurito
7550 Paragon Road
Dayton, OH 45459

Muskingum Watershed Conservancy District
1319 Third Street Northwest
New Philadelphia, OH 44663-1305

Jonathan C Mizer
Kyler, Pringle, Lundholm & Durmann, LPA
PO Box 668
New Philadelphia, OH 44663