ELECTRONIC CITATION: 2012 FED App. 0002P (6th Cir.)
File Name: 12b0002p.06

# BANKRUPTCY APPELLATE PANEL OF THE SIXTH CIRCUIT

| | |
|---|---|
| In re: MICHAEL JOSEPH SZERWINSKI; DONNA MARIA SZERWINSKI, <br><br> Debtors. <br><br>——————————————— <br><br> JOSIAH L. MASON, CHAPTER 7 TRUSTEE, <br> Appellant, <br><br> v. <br><br> MICHAEL JOSEPH SZERWINSKI; DONNA MARIA SZERWINSKI; PNC BANK f/k/a NATIONAL CITY BANK; MUSKINGUM WATERSHED CONSERVANCY DISTRICT, <br> Appellees. | No. 11-8050 |

Appeal from the United States Bankruptcy Court
for the Northern District of Ohio.
Bankruptcy Case No. 09-64294.
Adv. Case No. 10-6009

Argued: February 7, 2012

Decided and Filed: March 15, 2012

Before: EMERSON, FULTON, and McIVOR, Bankruptcy Appellate Panel Judges.

_____

COUNSEL

**ARGUED:** Josiah L. Mason, MASON, MASON & KEARNS, Ashland, Ohio, for Appellant. Amelia A. Bower, PLUNKETT COONEY, Columbus, Ohio, for Appellee. **ON BRIEF:** Josiah L. Mason, MASON, MASON & KEARNS, Ashland, Ohio, for Appellant. Amelia A. Bower, PLUNKETT COONEY, Columbus, Ohio, for Appellee.

## OPINION

MARCI B. McIVOR, Chief Bankruptcy Appellate Panel Judge. Josiah L. Mason, Chapter 7 Trustee ("Trustee"), appeals an order of the bankruptcy court dismissing the Trustee's adversary complaint against Michael Joseph Szerwinski and Donna Maria Szerwinski (the "Debtors"), PNC Bank (f/k/a National City Bank) ("Bank"), and Muskingum Watershed Conservancy District ("Conservancy District"). The bankruptcy court dismissed the Trustee's complaint based on its finding that the security interest held by the Bank in Debtors' cottage and lease is valid. For the reasons that follow, the Panel affirms the bankruptcy court's order finding: (1) the Bank holds a properly perfected security interest in the cottage and lease; and (2) dismissing the Trustee's complaint.

## ISSUES ON APPEAL

The issues presented by this appeal are whether the bankruptcy court erred in dismissing Trustee's complaint on the grounds that: (1) that Debtors' cottage is not chattel; (2) the Bank properly perfected its security interest by the recording of a mortgage; and (3) Trustee cannot avoid the Bank's security interest.

## JURISDICTION AND STANDARD OF REVIEW

The Bankruptcy Appellate Panel of the Sixth Circuit has jurisdiction to decide this appeal. The United States District Court for the Northern District of Ohio has authorized appeals to the Panel, and neither party has timely elected to have this appeal heard by the district court. 28 U.S.C. §§ 158(b)(6), (c)(1). A final order of the bankruptcy court may be appealed as of right pursuant to 28 U.S.C. § 158(a)(1). For purposes of appeal, an order is final if it "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Midland Asphalt Corp. v. United States*, 489 U.S. 794, 798, 109 S. Ct. 1494, 1497 (1989) (citations omitted). The bankruptcy court's order determining the validity of the Bank's lien and dismissing the Trustee's complaint is a final,

2

appealable order. *Rabin v. Shanker (In re Shanker)*, 347 B.R. 115 (B.A.P. 6th Cir. 2006) (unpub. table decision).

The bankruptcy court's conclusions of law are reviewed de novo. *Riverview Trenton R.R. Co. v. DSC, Ltd. (In re DSC, Ltd.)*, 486 F.3d 940 (6th Cir. 2007). "Under a *de novo* standard of review, the reviewing court decides an issue independently of, and without deference to, the trial court's determination." *Menninger v. Accredited Home Lenders (In re Morgeson)*, 371 B.R. 798, 800 (B.A.P. 6th Cir. 2007). The court's findings of fact are reviewed under the clearly erroneous standard. *In re DSC, Ltd.*, 486 F.3d at 944. "A finding of fact is clearly erroneous 'when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *Id.* (quoting *Anderson v. City of Bessemer City*, 470 U.S. 564, 573, 105 S. Ct. 1504 (1985)).

## FACTS

On September 22, 2006, Debtors entered into a 30-year lease ("Lease") with the Conservancy District.[1] The lease covered property located on Lot CM 234 at Charles Mill Reservoir, and with a street address of 945 Trout Drive, Mansfield, Ohio 44903 ("cottage"). The Lease was recorded in Richland County Recorder's Office on October 3, 2006. It is undisputed that the Conservancy District is the fee simple owner of the land.

The Lease contains four provisions that are relevant to the Panel's decision. First, Section 5 of the Lease states that "the LESSEE must, within five (5) years from the date of this lease, construct and maintain an approved residential dwelling on said premises." (Adv. Docket # 48, Trial Stipulations, Exh. A). When the Debtors entered into the Lease, a cottage had already been built on said premises by previous lessee, K. J. and Ann Bargahiser ("Bargahisers"). The Bargahisers subsequently sold the cottage to Jesse and Janet Hawks ("the Hawks") through a bill of sale and

---

[1] The Conservancy District is a political subdivision of the State of Ohio established under Ohio Rev. Code Ann. § 6101 *et seq.*

assigned their leasehold interest. The Hawks subsequently assigned their leasehold interest to the Debtors and the Debtors purchased the cottage from the Hawks through a bill of sale.

Second, Section 12 of the Lease states that "[t]he LESSEE shall at all times keep the leased premises, together with any buildings . . . free from all liens, mortgages, . . . except as may first be approved by the LESSOR . . . ." *Id.* In September, 2006, the Debtors, the Conservancy District, and the Bank entered into a "Consent and Agreement," which granted Debtors permission to encumber their "interest in *the lease and/or mortgage upon any residence*, building or appurtenant improvements now or thereafter located on said leased premises . . . ." (Adv. Docket # 48, Trial Stipulations, Exh. G) (emphasis added). The Consent and Agreement also states that by entering into such agreement, the Board of the Conservancy District "approves the loan from Lender to Lessee in the amount of $240,750.00, *to be secured by a mortgage upon the Lessee's interest in the lease and/*or security agreement *upon [s]aid residence* or other structure a[n]d improvements appurtenant thereto on the Conservancy District's lot." *Id.* at ¶ 1 (emphasis added). Moreover, "[i]n the event action is taken by the Conservancy District cancelling or forfeiting such lease, the Conservancy District will execute a new lease for said lot to Lender . . . for a period equal to the unexpired term of the cancel[l]ed or forfeited lease . . . ." *Id.* at ¶ 4.

Third, under Section 18, Debtors' ownership interest reverts to the Conservancy District in the event of a default. The Lease states specifically that if the Debtors default by failing to pay any part of the rent or failing to comply with applicable law, ordinance, rule, or regulation, "all right, title and interest of the LESSEE in the lease premises *shall terminate and cease and shall revert to the LESSOR*, together with the full right of LESSOR to re-enter upon said premises, take and possess the same, *together with all buildings*, structures, and improvements thereon . . . ." (Adv. Docket # 48, Trial Stipulations, Exh. A) (emphasis added).

Fourth, under Section 19, ownership of any building or structure on the leased land is held by the lessee. Section 19 states

4

> [a]ny buildings, structures or improvements erected by LESSEE on
> said premise *shall be the property of the LESSEE* . . . and may be
> removed by LESSEE, provided all money due or to become due
> under this agreement shall have been paid; . . . and provided also that
> all liens placed upon the property . . . shall have been satisfied; [and]
> provided also that said buildings are removed within thirty (30) days
> after termination of this lease for any cause . . . .

*Id.* (emphasis added).

On September 25, 2006 the Hawks and the Debtors executed an "Assignment and Extension of Cottage Site Lease," ("Assignment") which transferred the Hawks' interest in their Lease to the Debtors for consideration of one dollar. The Assignment was recorded in the Richland County Recorder's Office on October 3, 2006.

On September 27, 2006, the Hawks and Debtors executed a bill of sale ("Bill of Sale") that transferred title to the cottage from the Hawks to Debtors for $105,000. The Bill of Sale was recorded in Richland County Recorder's Office on October 3, 2006.

On the same day, the Debtors executed a mortgage in favor of the Bank ("mortgage"). The mortgage secured payment of a note in the amount of $240,750. On October 3, 2006, the mortgage was recorded in Richland County Recorder's Office. Attached to the recorded mortgage is "Schedule C" which provides a description of the property as follows: "Situated on Lot CM-234 in the Charles Mills Lake area of the Muskingum Watershed Conservancy District, in the Township of Mifflin, County of Richland, State of Ohio and covered by Lease #4948-R." (Adv. Docket # 48, Trial Stipulations, Exh. F).

On October 15, 2009, the Debtors filed a voluntary petition under Chapter 7. Debtors listed the cottage as real property on Schedule A stating that the amount of the secured claim was $235,000.

On February 2, 2010, the Trustee filed a complaint "to determine liens." The Trustee's complaint sought to avoid the security interests held by the Bank and the Conservancy District, in Debtors' cottage and Lease. The Debtors, the Conservancy District, and the Bank filed answers to Trustee's complaint.

On May 28, 2010, the Trustee filed a motion for summary judgment requesting that the bankruptcy court find that the mortgage was not secured by the cottage or the Lease. The Trustee argued that the mortgage did not create a perfected security interest in the cottage because the cottage is a chattel and an interest in chattel can only be perfected by the filing of a financing statement with the Ohio Secretary of State. In the alternative, the Trustee argued that even if the cottage is a fixture the bank failed to perfect its interest in the cottage in the manner required by Ohio law. The Bank argued that the mortgage is valid under Ohio law and creates a perfected security interest in both the Debtors' Lease and the cottage.

On August 5, 2010, the bankruptcy court issued a memorandum of opinion and an order denying Trustee's motion for summary judgment. The bankruptcy court made two rulings in its opinion and order. First, the court ruled that the Bank's mortgage was valid under Ohio law. Second, the bankruptcy court denied the Trustee's motion for summary judgment "because the facts, . . . viewed in the light most favorable to the non-movants, suggest that the cottage is not a chattel . . . .[a]lthough further investigation of the facts may show otherwise . . . ." (Adv. Docket # 21, p. 9). The bankruptcy court cited a number of factors that supported the conclusion that the cottage was not chattel, such as: (1) A Property Report Card ("Report Card") maintained by the Richland County Auditor's office which states that the "cottage was constructed on site and never had an independent identity before it was installed on the property;" (2) The cottage has a basement which "suggests that it is well-integrated with and would be difficult to remove from the property;" and (3) Section 19 of the Lease states that Debtor owns the property. *Id.* The court concluded that whether the cottage was chattel created a question of fact and scheduled the matter for trial.

6

On June 6, 2011, the bankruptcy court held a trial in this matter. During the trial, the Trustee presented three witnesses: Donnie J. Borland ("Borland"), lease manager of the Conservancy District, and both Debtors. The bankruptcy court's opinion summarized the testimony as follows:

> [T]he trustee called Donald Borland, who is the lease manager for the Conservancy District. He testified that the Conservancy District leases only the land around Charles Mill Reservoir and regards the cottages as personal property under the terms of the Conservancy District's standard form lease. He also pointed out that cottages in the Conservancy District are transferred by bill of sale as opposed to deed. Finally he testified that it was possible to move a cottage from the leased land. He recalled that, several years ago, a cottage on land owned by the Conservancy District on Seneca Lake was moved to private property on the same lake. On cross examination, Mr. Borland confirmed that the cottage does not have axles or wheels and is a three-level house with a basement.
>
> Second, the trustee called Mr. Szerwinski. Mr. Szerwinski testified that at the time he purchased the property he understood that he was only purchasing the cottage and not the land it sits on. He testified that he understood that he might be required to move or demolish the cottage at the end of the lease. He also testified that he was aware that buildings could be moved and that he had seen a building moved on television. Third, trustee called Mrs. Szerwinski. She also testified that, at the time the debtors purchased the cottage, she understood that they would own only the cottage and not the land. On cross-examination she confirmed that the cottage is fully-integrated structure with a basement.
>
> By stipulation of the parties, the trustee also submitted into evidence the deposition of Earick Earhart, a licensed appraiser. He testified that he appraised the cottage in August of 2006. (Deposition at 13). He confirmed that the structure was a fully-integrated, three-story house. However, he testified that he did not consider the lower level a basement because it was finished in a way that was similar to the other two levels of the house. (Deposition at 14). He testified that the cottage could be moved because "[a]ny structure can be moved." (Deposition at 31). He testified that he had never witnessed a structure being moved but was aware of a historic building in Ashland, Ohio that had been moved from one side of the street to the other. (Deposition at 32-3.3). He also testified that, regardless of whether the cottage was transferred by deed, he considered the cottage to be real estate as opposed to real property. (Deposition at 48).

7

(Adv. Docket # 62, Memorandum of Opinion dated June 27, 2011, p.3). The parties also stipulated that a Warranty Deed was recorded from C.F. Tucker, et al., to the Conservancy District pertaining to the land owned by them and upon which the Debtors' cottage is located. Other than what was stipulated to by the parties, the Bank did not present any witnesses or evidence during the trial.

On June 27, 2011, the bankruptcy court issued a memorandum of opinion. The bankruptcy court incorporated its opinion denying Trustee's motion for summary judgment, and concluded that the Trustee failed to prove that the cottage is chattel. The court held that the Trustee failed to produce evidence that the Debtors had any intention to move the cottage; moreover, it was beyond dispute that the cottage was highly integrated and as such would be difficult to move the structure from the land. Since the cottage was a fixture, the Bank had properly perfected its mortgage against the property. Therefore, the Trustee could not avoid the Bank's security interest and the bankruptcy court dismissed the adversary proceeding. On July 11, 2011, the Trustee filed a timely notice of appeal.

## DISCUSSION

I. Does the Chapter 7 Trustee have authority to avoid the Bank's mortgage pursuant to 11 U.S.C. § 544?

The Bank argues that the Trustee never raised 11 U.S.C. § 544 as a claim for relief, therefore its claim under this section is not properly before this Panel on appeal. Under the "strong arm" clause of the Bankruptcy Code, 11 U.S.C. § 544(a), a Trustee is entitled to avoid a mortgage that was not properly perfected. Section 544(a)(3) provides:

> (a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by--
>
> . . . .
>
> (3) a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such a transfer to be perfected, that obtains the status of a bona fide purchaser and

8

>has perfected such transfer at the time of the commencement of the
>case, whether or not such a purchaser exists.

11 U.S.C. § 544(a)(3). Under § 544(a)(3), the Trustee's interest in the Debtors' property is that of a bona fide purchaser of the property who purchased the property without notice of any prior encumbrance and recorded his interest on the date the Debtors' petition was filed.

The bankruptcy court's docket demonstrates that the Trustee asserted 11 U.S.C. § 544 as the basis of his claim. Although the Bank is correct that the Trustee does not mention, either in his initial complaint or in his motion for summary judgment, that he is proceeding under 11 U.S.C. § 544; the Trustee cites to 11 U.S.C. § 544 as the basis for his claim in proposed conclusions of law filed with the bankruptcy court prior to trial. Thus, the Bank was on notice prior to trial that the Trustee was proceeding under § 544. The Trustee has the authority to avoid the bank's mortgage under 11 U.S.C. § 544.

While the Trustee has the power to bring an avoidance action under 11 U.S.C. § 544, the primary issue on appeal is whether the bankruptcy court erred in ruling against the Trustee on the merits of the case. The Trustee argues that the court erred in finding that the Bank had properly perfected its security interest in the cottage and the Lease. If the cottage is "chattel property," the Trustee is correct, if the cottage is a "fixture," the issue is whether the Bank properly perfected its security interest in a fixture.

II.     Is the cottage a chattel or a fixture under Ohio law?

In order for the Trustee to prevail under 11 U.S.C. § 544 and avoid the Bank's security interest in the Debtors' cottage and Lease, the Trustee must first show that the cottage is a chattel, and not a fixture or real property. If the cottage is chattel, the only means of perfection is the filing of a financing statement with the Secretary of State. If the cottage is a fixture, a security interest may be perfected by the filing of a mortgage with the county recorder, so long as the mortgage complies with the elements of a financing statement under Ohio Rev. Code § 1309.502(c).

9

Whether property is considered a chattel or a fixture, is determined by reference to applicable state law. *Butner v. United States*, 440 U.S. 48, 54 99 S. Ct. 914 (1979); *see also In re Davis*, 386 B.R. 182, 186 (B.A.P. 6th Cir. 2008) (citing *Cluxton v. Fifth Third Bank (In re Cluxton)*, 327 B.R. 612 (B.A.P. 6th Cir. 2005) (applying Ohio law to determine whether a mobile home is real property or personalty)). Since the Debtors' cottage is located in Ohio and the mortgage was executed in Ohio, the issues before the Panel are governed by Ohio Law.

The Ohio Supreme Court in *Teaf v. Hewitt*, 1 Ohio St. 511, 527, 1853 WL (1853), defines the terms chattels and fixtures. First, a chattel is defined as movable goods, but also includes goods that are "for *temporary purposes* somewhat attached to the land . . . ." *Teaf*, 1 Ohio St. at 527 (emphasis added). The term "fixture" is defined as an "article which was a chattel, but which by being physically annexed or affixed to the realty, became an accessory to it and part and parcel of it." *Id.*; *see also* Ohio Rev. Code § 1309.102(41) (defines fixtures as "goods that have become so related to particular real property that an interest in them arises under property law."). Once property becomes a fixture, the property is treated as part of real property and a security interest may be perfected by way of a mortgage so long as certain other requirements are satisfied.

In order to determine whether a piece of property has become a fixture, the Ohio Supreme Court in *Teaf* established a three-part test:

> 1st. Actual annexation to the realty, or something appurtenant thereto.
> 2d. Appropriation to the use or purpose of the part of the realty with which it is connected.
> 3d. The intention of the party making the annexation, to make the article a permanent accession to the freehold-this intention being inferred from the nature of the article affixed, the relation and situation of the party making the annexation, the structure and mode of annexation, and the purpose or use for which the annexation has been made.

*Id.* at 530. This test is still used by courts today. *See In re Cluxton*, 327 B.R. 612, 615 (6th Cir. B.A.P. 2005).

10

The first factor, annexation, "has come to be regarded as less determinative of fixture status than was formerly the case at common law." *Masheter v. Boehm*, 37 Ohio St.2d 68 (Ohio App.2d 2009). Slight or constructive attachment is all that is required as long as the other two elements are established. *In re Kerr*, 383 B.R. at 342 (citing *In re Cluxton*, 327 B.R. at 615; *Holland Furnace Co. v. Trumbull Savings & Loan Co.*, 135 Ohio St. 48 (1939)).

The second factor focuses on whether the property has adapted to the use associated with its installation and has become "an integral and necessary part of the whole premises [and] ordinarily . . . would not be taken out or dismantled until it was worn out by use." *In re Jarvis*, 310 B.R. 330 (Bankr. N.D. Ohio 2004) (citing *In re Cluxton*, 327 B.R. at 615; *Holland Furnace Co. v. Trumbull Savings & Loan Co.*, 135 Ohio St. 48 (1939)).

The third factor, intention of the parties, addresses whether the parties intended to make personal property a permanent fixture. "[I]t is not necessarily the real intention of the owner of the chattel which governs. [The owner's] apparent or legal intention to make it a fixture is sufficient" and that "ought to be apparent form the situation and surroundings." *Holland Furnace Co. v. Trumbull Savs. & Loan Co.*, 135 Ohio St. 48, 53-54 (1939). A determination of a parties' intent is made by examining the totality of the circumstances. *G&L Investments v. Designer's Workshop, Inc.*, No. 97-L-072, 1998 WL 553213, at *5 (Ohio App. June 26, 1998).

Evidence of the parties' intent may be gleaned from agreements entered into by the parties. As to the issue of intent, however, an agreement between the parties is not necessarily dispositive. *Jarvis*, 310 B.R. at 336. As the bankruptcy court held in *Jarvis*

> an intent to create a fixture also has an objective component in that for a chattel to be found to be a fixture, it must be affixed to the realty in such a manner that it will indicate to all persons dealing with the realty that it was the intention and purpose of the owner of the chattel to make it a permanent attribute of the realty. Many different considerations are useful in this regard—for example, the permanent and impermanent nature of the property, the mode of attachment, and the relationship between the parties.

11

*Id.* (internal citation omitted). The parties' intent can also be inferred from whether the item is "capable of severance without material harm to the realty" to which it is attached. *See* Official Comment to Ohio Rev. Code § 1302.01 (2008).

In its memorandum of opinion, the bankruptcy court applied the three factor test set forth in *Teaf* and concluded that the cottage was a fixture rather than chattel. With regard to the first factor, annexation, the bankruptcy court held that the evidence showed that the "the cottage is highly integrated with the land" and physically attached thereto. The Property record card indicates that the home was "constructed on site and never had an independent identity before it was installed on the property."[2] *See* Adv. Docket # 48, Trial Stipulations, Exh. H.

As it relates to the second factor, the bankruptcy court considered facts that demonstrate the cottage had become "an integral and necessary part of the whole premises" making it unlikely that it would be taken out or dismantled. Borland testified that it was unusual to move a cottage and that he was aware of only one case in which a cottage was moved. Also, the court concluded that relocation of the cottage would be expensive. Mrs. Szerwinski's testimony also revealed that the home was three levels, did not have wheels, could not be driven off the foundation, and looks like an integrated structure from the outside.

With regard to the third *Teaf* factor, that is, the intention of the parties, the bankruptcy court found that neither the documents nor the testimony at trial proved that the parties intended the cottage to be chattel.

In this appeal, the Trustee only addresses the third *Teaf* factor. The Trustee's arguments may be summarized as follows: (1) the documents demonstrate an intent to treat the cottage as chattel; (2) evidence introduced at trial demonstrates an intent to treat the cottage as chattel; and (3) the fact that the cottage was transferred by bill of sale proves the cottage is chattel. The Trustee first argues

---

[2]The parties specifically stipulated that "[t]he House has a basement and a concrete block foundation." (Adv. Docket # 48, Trial Stipulations, ¶ 23, p. 4).

12

that the agreements entered into by the parties, specifically the Lease and Bill of Sale are evidence that the parties intended to treat the cottage as chattel. The Trustee relies primarily on Section 19 of the Lease. That section states in relevant part:

> [a]ny buildings, structures or improvements erected by LESSEE on said premise shall be the property of the LESSEE . . . and may be removed by LESSEE, provided all money due or to become due under this agreement shall have been paid; . . .and provided also that all liens placed upon the property . . . shall have been satisfied; *[and] provided also that said buildings are removed within thirty (30) days after termination of this lease for any cause* . . . .

(Adv. Docket # 48, Trial Stipulations, Exh. A).

The bankruptcy court rejected the Trustee's argument that the documents evidenced an intent to treat the cottage as chattel. The court stated that the documents "send at best mixed signals." (Adv. Docket # 62, p. 4). The court noted the Lease distinguishes between the termination of the Lease by way of a default (Section 18), and termination of the Lease by way of expiration (Section 19). The court stated:

> Section 19 of the Cottage Site Lease . . . provides that the debtors may remove any dwelling they construct within 30 days of the expiration of the lease. On the other hand, Section 18 treats the cottage as permanent addition by providing that in the event of default "all right, title and interest of the LESSEE in the leased premises shall terminate and cease and shall revert to the LESSOR, together with all buildings, structures, and improvements . . . .

*Id.* Because Section 18 of the Lease appears to treat the cottage as a fixture, the bankruptcy court ruled that the language of Section 19 was not conclusive evidence of an intent for the cottage to be chattel.

The court also reviewed the testimony of the witnesses and found that the Trustee failed to show that debtors had any intention to move the cottage. Both Debtors testified and both acknowledged that they might have to move the cottage in the future, however, there was no "clear intent to move the buildings from the realty." (Adv. Docket # 62, p. 4). Moreover, "[a]ny intent that

13

part of the house *could be moved*, does not change the fact that the entirety of it is attached to the real property." *Id.* (emphasis added).

The Trustee argues on appeal that the fact that the Debtors did not intend to move the cottage is not relevant and "should have had no significance from a legal standpoint in the Bankruptcy Court's finding that the cottage was realty and not a chattel." (Trustee's Br., p. 7). The Trustee, however, provides no legal support for this conclusion and his assertion is contrary to the requirement that the court look to "other attending circumstances." *Teaf*, 1 Ohio St. at 533-534; *see also In re Kerr*, 383 B.R. 337, 342 (Bankr. N.D. Ohio 2008) (holding that whether personal property has become a fixture is made based on the facts and circumstances of each particular case.). Moreover, the bankruptcy court's conclusion that there must be "clear intent" is supported by the holding of the Supreme Court of Ohio in *Masheter v. Boehm*, 37 Ohio St.2d 68, 74 (1974), finding that "intent to have the . . . property . . . considered . . . part of the realty must be accompanied by some positive act or course of action clearly demonstrating this intent . . . ."

The Trustee also argues on appeal that the transfer of the cottage by a bill of sale rather than by a deed proves that the cottage is chattel property. The testimony at trial was that all prior conveyances of the cottage were made by bill of sale, and the transfer by bill of sale was at the request of the Conservancy District. As Borland testified, maintaining ownership in the land "gives [the Conservancy District] the ability to have some control over the appearance and constructions around those lakes." (Adv. Docket # 73, Tr. of Trial held on June 6, 2011, p.16). Since the Conservancy District is the fee simple owner of the land, it is unclear whether a deed is the appropriate means by which to convey title in just the physical structure of the cottage. There is no caselaw supporting the Trustee's argument that a transfer of property, by a "Bill of Sale" conclusively establishes that the property is chattel. The Panel finds the fact that the property was transferred by Bill of Sale is immaterial to its determination of whether the cottage is a chattel or a fixture.

14

Upon a review of the entire record in this appeal, the Panel affirms the bankruptcy court's finding that the Debtors' cottage is a fixture rather than chattel property. The bankruptcy court performed a detailed inquiry into the facts presented and applied the correct legal standard. The court's findings are not clearly erroneous.

III. <u>Given that the cottage is a fixture, does the Bank's mortgage satisfy the requirements for perfecting a security interest under Ohio law?</u>

Under Ohio law, a party may perfect a security interest in a fixture by making a fixture filing. *In re Adkins*, 444 B.R. 374, 377 n.4 (Bankr. N.D. Ohio 2011). A fixture filing may be accomplished by the filing of a financing statement with the secretary of state or by the filing of a mortgage with the office of the county recorder, as long as it satisfies the requirements for a financing statement under Ohio Rev. Code § 1309.502(c).[3] Such mortgages are effective for the duration of the real property recording. The requirements that must be met under § 1309.502(c) are the following:

> (1) The record indicates the goods or accounts that it covers;
>
> (2) The goods are or are to become fixtures related to the real property described in the record, or the collateral is related to the real property described in the record and is as-extracted collateral or timber to be cut;
>
> (3) The record satisfies the requirements for a financing statement contained in this section other than an indication that it is to be filed in the real property records; and
>
> (4) The record is duly recorded.

Ohio Rev. Code § 1309.502(c).

---

[3] In *Mason v. Pryor (In re Pryor)*, 215 B.R. 362 (Bankr. N.D. Ohio 1997), a case under former Article 9 provisions of the Ohio Uniform Commercial Code, the court held that where a lender recorded its mortgage on a cottage and other structures only with the county recorder, and not with the Secretary of State, any secured interest the lender had was avoidable by a Chapter 7 trustee. The *Pryor* decision, however, was based on Ohio Revised Code § 1309.38(A)(4), requiring the filing of a financing statement in the office of the secretary of state *and* the office of the county recorder. Section 1309.38 was repealed as of July 1, 2001. As discussed above, Ohio Rev. Code § 1309.502(c), now authorizes the recording of a mortgage only with the register of deeds, so long as the mortgage complies with the requirements for filing a financing statement.

In the bankruptcy court's opinion denying Trustee's motion for summary judgment, the court held that the mortgage document satisfies the requirements for a financing statement under Ohio Rev. Code § 1309.502(c).[4] The court held that:

> The Trustee argues that the financing statement does not "indicate the goods or accounts it covers" as required by section 1305.509(C)(1) because it fails to identify the cottage. But, the trustee is mistaken. Ohio Revised Code § 1309.108 provides that, subject to exceptions not applicable here, "any description of personal or real property is sufficient whether or not it is specific if it reasonably identifies what it describes." Section 1309.108(B)(2) provides that a good is reasonably described by a category and fixtures are a category of good. Ohio Rev. Code § 1309.102.44(a). Thus, because the mortgage identifies "all . . . fixtures now or hereafter a part of the property," the mortgage "indicates the goods and or accounts it covers." *Lehman Com. Paper, Inc. v. Official Comm. of Unsecured Creditors (In re Hawaiian Telcom Commc'ns, Inc.)*, 2009 WL 2575663, *7 (Bankr. D. Haw. 2009).

(Adv. Docket # 23, p. 8).

Although neither the bankruptcy court, nor the Trustee address the final element of § 1309.502(c), that the mortgage be "duly recorded," the evidence shows that the Bank met this requirement. The proper place for the recording of a mortgage is with "the office of the county recorder of the county in which the mortgaged premises are situated and shall take effect at the time they are delivered to the recorder for record." *See* Ohio Rev. Code §§ 5301.23(A), 5301.25, 5310.02. The Bank executed a mortgage to secure its interest in the Debtors' cottage and Lease and properly filed it in the office of the county recorder of Richland County, Ohio on October 3, 2006. The mortgage contained all the requirements of a financing statement. The Panel affirms the

---

[4] In the bankruptcy court's decision denying trustee's motion for summary judgment, the court also addressed certain defects in the mortgage document itself, which the Trustee argued invalidated the mortgage. Specifically, the Trustee argued that the mortgage document was not valid because it does not refer to the leasehold interest; does not describe the property other than a post office address; and indicates that the property is located in Ashland, instead of Richland County, Ohio. The bankruptcy court held that despite such defects, the description of the property complied with Ohio law. The bankruptcy court's opinion after trial deemed these arguments waived sice the Trustee failed to present any further evidence at trial to support his position. Therefore, these issues are not before the Panel on appeal.

16

bankruptcy court's finding that the Bank properly perfected its security interest in the cottage by filing with the county recorder.

IV. <u>Does the Bank's properly perfected mortgage also secure the Debtors' leasehold interest?</u>

Trustee argues that the mortgage does not secure the Bank's interest, if any, in Debtors' Lease. The Bank argues that it holds a security interest in both the cottage and the Lease. Ohio law recognizes mortgages on leasehold interests. *Abraham v. Fioramonte*, 107 N.E.2d 321 (1952). If a mortgagee properly perfects its security interest in the leasehold, the mortgagee's lien extends to whatever interest the mortgagors have in the leasehold. *Id.* at 326.

The evidence presented at trial shows that when the Debtors executed the mortgage, the Debtors encumbered their interest in the Lease. The mortgage document itself makes specific reference to the lease in Schedule C which includes as part of the description of the property being encumbered, that the cottage is "covered by Lease #4948-R." (Adv. Docket # 48, Trial Stipulations, Exh. F). Also, the Consent and Agreement entered into by the Debtors states that the Debtors' loan is to "be secured by a mortgage upon [Debtors'] interest in the lease and/or security agreement upon said improvements." (Adv. Docket # 48, Trial Stipulations, Exh. G). Finally, the Consent and Agreement signed by Conservancy District states that the Board of the Conservancy District through this agreement was giving their approval of the loan with the knowledge that it was "to be secured by a mortgage upon the Lessee's interest in the lease and/or [s]aid residence." *Id.* The Bank properly recorded its mortgage, and in doing so perfected its interest in the cottage and in Debtors' leasehold interest. The Conservancy District acknowledged that the Bank had a security interest in the leasehold. Therefore, the Panel affirms the bankruptcy court's ruling that the Bank has a security interest in both the cottage and the Debtors' Lease.

## CONCLUSION

For the reasons stated above, the Panel affirms the bankruptcy court's order dismissing the Trustee's complaint.